UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Mack et al.,
                                          Civil No. 13-1838 (JRT/FLN)
                    Plaintiffs,

        v.                                **REPORT AND RECOMMENDATION**

Caryotakis et al.,


                    Defendants.

———————————————————————————

James Susag for Plaintiff.
Mark Thompson for Defendants Paul and Paula Caryotakis.
George Hoff and Jared Shepherd for Defendants City of Plymouth and the Individual City
Defendants (Eric Jacobson, Michael Goldstein, Lara Newberger, Barb Northway, and Laurie
Ahrens).

———————————————————————————

**THIS MATTER** came before the undersigned United States Magistrate Judge on February 3, 2014 on Defendants Paul and Paula Caryotakis' motion to dismiss under Fed. R. Civ. P. 12(b)(1) (ECF No. 16) and the City of Plymouth and the Individual City Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) (ECF No. 29). The matter was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636 and Fed. R. Civ. P. 72. For the reasons set forth below, the Court recommends that Defendants' motions be **GRANTED**.

## I.    FACTS

**A.    Summary**

This matter arises out of a dispute between neighbors. Plaintiffs Andrew and Catherine Mack (the Macks) and Defendants Paul and Paula Caryotakis (the Caryotakises) own adjoining property in Plymouth, MN (the City). The Macks allege that between 2004 and 2012, the Caryotakises entered their property without permission to mow vegetation. In response to the Caryotakises'

actions, the Macks began constructing a fence to enclose their property. According to the Macks, this action so infuriated the Caryotakises that the pair commenced a campaign directed at the City to have the Macks cited for violation of City Code 810.01 (the Weed Ordinance). The Caryotakises communicated with several city employees throughout 2011 and 2012 regarding the Macks' property. Eventually, the City issued a citation to the Macks for violation of the Weed Ordinance in October of 2012.

The Macks now bring claims against the Caryotakises, the City, and the Individual City Defendants (the individually named employees of the City: Eric Jacobson, Michael Goldstein, Lara Newberger, Barb Northway and Laurie Ahrens). The amended complaint states six counts. Three counts allege state law trespass claims against the Caryotakises: Count I—trespass to the personal property; Count II—trespass to the real property; and Count III—trespass to the personal property, treble damages. Am. Compl., ECF No. 13 at ¶¶ 99-111. The remaining claims are brought against the City and the Individual City Defendants: Count IV—violation of 42 U.S.C. § 1983; Count V—attorneys' fees; and Count VI—declaratory judgment. *Id.* at ¶¶ 112-137.

**B.      The Caryotakises' Alleged Actions of Trespass**

Starting in the summer of 2004 and continuing to October 2012, the Caryotakises repeatedly entered the Mack property without permission. *Id.* at ¶ 17, 20. While on the Mack property, the Caryotakises mowed grasses and plants growing on the northern and eastern portion of the property fronting a pond. *Id.* at ¶¶ 18, 21. In 2008, 2009, and 2010, the Caryotakises requested permission from the Macks to enter their property and alter the vegetation growing in the northern and eastern portions of the property, but the Macks denied each request. *Id.* at ¶¶ 24-26. On several occasions in May 2011, the Macks continued to observe the Caryotakises entering their property without

2

permission. *Id.* at ¶¶ 27-28, 32. The Macks reported one such instance to the City Police Department, and a trespass notice was subsequently issued to Paul Caryotakis, preventing him from entering the Mack property for a period of one year. *Id.* at ¶ 33.

### C.     First Allegation of a Weed Ordinance Violation

On May 30, 2011, the Macks received a nuisance weed notice from the Caryotakises presented on City letterhead which referred to the Weed Ordinance and claimed that the Macks' yard was in violation of City code. *Id.* at ¶ 34. The Weed Ordinance states the following restrictions regarding weeds grown on City residential properties:

> Subdivision 2. <u>Weeds as a Nuisance</u>. Weeds, tall grasses and other rank or harmful vegetation, growing upon any property adjacent to the traveled portion of any street, alley, trail or sidewalk in the City, exceeding the height of eight (8) inches on proeprties other than Agricultural or Natural Preserve or buffer strips shall be cut or caused to be cut, by the owner of the property. . . .

*Id.* at ¶ 36.

In response to receiving the  nuisance weed notice, the Macks contacted Lara Newberger, a forestry technician employed by the City, who inspected the Macks' property and concluded that the Macks were not in violation of the Weed Ordinance. *Id.* at ¶ 38.

### D.     The Macks Build a Fence

On May 31, 2011, Catherine Mack applied for a permit to build a fence along the northern portion of the property; the City approved the permit, allowing the Macks to construct a six foot tall board fence. *Id.* at ¶ 41.

Andrew Mack started construction on the fence in June 2011. *Id.* at ¶ 44. Paula Caryotakis witnessed Andrew Mack's activities and an oral altercation between the parties occurred. *Id.* at ¶ 45. Shortly thereafter, the City Police Department issued a trespass notice to Andrew Mack. *Id.*

Throughout the summer of 2011, the Caryotakises sent emails to various city officials complaining about the Macks' fence construction. *Id*. at ¶¶ 46, 48, 50, 52, 53. On multiple occasions the City investigated the Caryotakises' complaints and concluded that the fence was not in violation of City rules or regulations. *Id*. at ¶¶ 47, 49, 56. The Caryotakises additionally emailed the Macks directly regarding the fence several times during the fall of 2011, eventually resulting in the City Police Department informing the Caryotakises that their emails to the Macks needed to cease. *Id*. at ¶ 60. From November 2011 to January 2012, the Caryotakises continued to email city officials regarding the Macks' fence and met with officials in person to discuss the issue on January 20, 2012. *Id*. at ¶¶ 62-66.

On May 14, 2012, Counsel for the Caryotakises sent the Macks a letter claiming that the Caryotakises had acquired a prescriptive easement in the Mack property through approximately 20 years of mowing the property. *Id*. at ¶ 68. The Macks, in turn, hired an attorney to rebut the prescriptive easement claim. *Id*. at ¶ 69.

**B.     City Enforcement of the Weed Ordinance**

The Macks received an undated letter from Newberger on July 6, 2012. *Id*. at ¶ 70. The letter stated that the Macks were currently in violation of the Weed Ordinance due to the height of vegetation on the property:

> The City of Plymouth has received complaints about weeds or tall grass on this property. Plymouth Forestry staff inspected the property on 6/25/2012 and confirmed that weeds or grass on your lot exceed the height limit allowed by City Code Sections–810.01. To rectify this situation, please have the weeds, tall grass and other vegetation cut by 7/5/2012. Cut tall weeds in the northeast corner of your lot, maintain under 8' and from seeding. Grasses are okay to leave. . . .

*Id*. According to the Macks, the Caryotakises contacted several City employees throughout the summer of 2012 regarding the Macks' property. *Id*. at ¶¶ 74-75. Newberger stated in a July 9, 2012

email that the Caryotakises "have been calling me repeatedly concerned [that] the weeds on the Mack property are going to seed and spread[ ] into their property and into their gardens." *Id*. at ¶ 74. On July 9, 2012 the Caryotakises sent an email to City Manager Laurie Ahrens addressing the issue and Ahrens disseminated the email to several city employees. *Id*. at ¶ 75.

On July 16, 2012 the City Attorney sent a letter to the Macks which stated that the Macks' fence complied with the City Code and that the "weed issue" would not be addressed until the summer of 2013. *Id*. at ¶¶ 77, 80.

Paula Caryotakis appeared at a City Council meeting on September 11, 2012 and, during the open forum portion of the meeting, allegedly presented false information related to the Macks' vegetation—untimely photographs taken in the summer of 2011 of the Macks' property. *Id*. at ¶ 79. On approximately September 14, 2012, Ahrens sent a letter to the Macks addressing the photographs presented at the City Counsel meeting and stating that the City planned to enforce the Weed Ordinance against the Macks. *Id*. at ¶ 80.

Newberger again inspected the Macks' property on September 17, 2012. *Id*. at ¶ 81. Barb Northway, the Deputy Director of Parks and Recreation, subsequently wrote to the Macks, asserting that "the City of Plymouth has received complaints about weeds or tall grass on this property. Plymouth Forestry staff inspected the property on September 17, 2012 and confirmed that weeds or grass on your lot exceed the height limit allowed by City Code Sections – 810.01. Please cut tall weeds in a 20' radius around your fence restoration project." *Id*. at ¶ 82.

Shortly thereafter, counsel for the Macks wrote Newberger, Northway, and Ahrens relating to the City's lack of enforcement of the Weed Ordinance in regards to similar properties. *Id*. at ¶ 83. On October 10, 2012, Ahrens requested that the City Police Department issue a citation to the Macks

for violating the Weed Ordinance. *Id*. at ¶ 84. The City's Chief of Police, Michael Goldstein, accordingly instructed an officer to issue a citation. *Id*. On October 12, 2012, Eric Jacobson, a Community Service Officer employed by the City's police department, issued a citation to Andrew Mack for "weeds as a nuisance > 8 inches." *Id*. at ¶ 85. The Macks contend that, despite their numerous requests and complaints, the City has failed to enforce the Weed Ordinance against its own properties or adjacent properties with similar vegetation. *Id*. at ¶ 93.

## II.   STANDARD OF REVIEW

### A.   Rule 12(b)(1) Motion to Dismiss

The jurisdictional power of federal courts is defined by Article III of the Constitution. Because federal courts are not courts of general jurisdiction, the issue of subject-matter jurisdiction may be raised at any time. *See* Fed. R. Civ. P. 12(b)(1); *Arbaugh v. Y & H Corp*., 546 U.S. 500, 514 (2006) (stating that subject-matter jurisdiction may never be forfeited or waived). Indeed, a federal court has a "special obligation" to satisfy itself of its own jurisdiction. *See Bender v. Williamsport Area Sch. Dist*., 475 U.S. 534, 541 (1986). If subject-matter jurisdiction is lacking, the court must dismiss the action. *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004).

A motion attacking the Court's subject-matter jurisdiction is governed by Rule 12(b)(1) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion to dismiss can either (1) attack the complaint's claim of jurisdiction on its face or (2) attack the factual basis for jurisdiction. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). A facial challenge to subject-matter jurisdiction argues that factual allegations made in a complaint—even if truthful—are insufficient to establish jurisdiction. *Carlson Holdings, Inc. v. NAFCO Ins. Co.*, 205 F. Supp. 2d 1069, 1073 (D. Minn. 2001). When analyzing a facial challenge to jurisdiction, the Court considers

the pleadings alone. *Id.* In contrast, "[w]here a defendant mounts a 'factual attack' on the plaintiff's complaint, 'the court considers matters outside the pleadings and the non-moving party does not have the benefit of 12(b)(6) safeguards' in that the court may not presume the factual allegations in the plaintiff's complaint are true." *Rector v. State Farm Mut. Ins. Co.*, 392 F. Supp. 2d 1069, 1071 (W.D. Mo. 2005) (quoting *Osborn v. United States*, 918 F.2d 724, 729 n. 6 (8th Cir. 1990)).

## B.     Rule 12(b)(6) Motion to Dismiss

In considering a Rule 12(b)(6) motion, the court views the pleadings in the light most favorable to the nonmoving party and treats the alleged facts as true. *See Ossman v. Diana Corp.*, 825 F. Supp. 870, 879–80 (D. Minn. 1993). Conclusions of law made by the nonmoving party, however, are not "blindly accept[ed]." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A Rule 12(b)(6) motion to dismiss is granted when the factual allegations, even assumed to be true, do not entitle that party to relief. *See, e.g., Taxi Connection v. Dakota, Minn. & E. R.R. Corp.*, 513 F.3d 823, 826–27 (8th Cir. 2008).

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief." A pleading must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not

'shown'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

## III.    ANALYSIS

### A.    City of Plymouth and Individual City Defendants' 12(b)(6) Motion to Dismiss

#### 1.    Section 1983 Claims

In Count IV of the amended complaint, the Macks bring 42 U.S.C. § 1983 claims against the

City and Individual City Defendants. Section 1983 provides the following:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the depravation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983.

Accordingly, in order "[t]o state a claim under § 1983, a plaintiff must allege the violation

of a right secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S.

42, 48 (1988). Here, the Macks specify two alleged constitutional deprivations related to the

enforcement of the Weed Ordinance: (1) an equal protection violation pursuant to the Fourteenth

Amendment; and (2) a violation of due process under the Fifth and Fourteenth Amendments.[1] ECF

---

[1]      In the briefing, the parties dispute whether the Macks adequately asserted
independent state law causes of actions under the Minnesota Constitution. The
amended complaint addresses state law constitutional claims only within the
context of the Macks' request for Declaratory Judgment, not as an individual
cause of action. Accordingly, any state law constitutional claim against the City
and Individual City Defendants is not properly pled as Declaratory Judgment is
not an independent cause of action. *See Alliance for Metro. Stability v. Metro.
Stability v. Metro Council*, 671 N.W.2d 905, 916 (Minn. Ct. App. 2003) ("A party
seeking a declaratory judgment must have an independent, underlying cause of
action based on a common-law or statutory right."). Even if this Court were to
consider state law equal protection or due process claims, the Court's analyses

No. 13 at ¶¶ 112- 123. The City and the Individual City Defendants' motion to dismiss the section 1983 claims should be granted.

### i.    Equal Protection Claim Alleged Against the City

In Count IV of the amended complaint, the Macks assert that the City violated their rights to equal protection through discriminatory enforcement of the Weed Ordinance. ECF No. 13 at ¶¶ 118, 120. The City argues that the Macks failed to allege sufficient facts to establish a selective enforcement equal protection claim and that the claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). The Court agrees with the City.

"[A] plaintiff seeking to establish municipal liability on the theory that a *facially lawful* municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl.  v. Brown*, 520 U.S. 397, 407 (1997) (citing *Canton v. Harris*, 489 U.S. 378, 387 (1989)). "Municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by city policymakers." *Harris*, 489 U.S. at 389.  As the Eighth Circuit stated in *Szabla v. City of Brooklyn Park*:

> Where a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a "policy" by demonstrating that the inadequacies were a product of a deliberate or conscious choice by policymakers.

and conclusions would remain the same. *See Kolton v. Cnty. of Anoka*, 645 N.W.2d 403, 411 (Minn. 2002) (stating that claims of equal protection under federal and Minnesota law "have been analyzed under the same principles. . . ."); *Anderson v. City of St. Paul*, 32 N.W.2d 538, 541 (Minn. 1948) (offering that Minnesota's due process clause is no more restrictive than the due process clause of the federal constitution's Fourteenth Amendment).

The standard of fault in that situation is 'deliberate indifference' to constitutional rights. . . . Thus, only where a municipality's failure to adopt adequate safeguards was the product of deliberate indifference to the constitutional rights of its inhabitants will the municipality be liable for an unconstitutional policy under § 1983.

486 F.3d 385, 390 (8th Cir. 2007) (internal citations and quotation marks omitted).

Here, the Macks failed to plead sufficient facts to establish an unconstitutional City "policy" and that city officials were deliberately indifferent to the results of such a policy. In support of their argument, the Macks note that (1) Paula Caryotakis presented false information at the September 2012 City Council meeting and (2) the City Council was well aware of the Caryotakises' "baseless" complaints regarding the Mack property. ECF No. 38 at 22. The Macks also emphasize that the City failed to enforce the Weed Ordinance against others, even after the Macks requested enforcement against adjacent properties. *Id*. Based on these facts, the Macks assert that "[t]he City discriminatorily enforced the Weed Ordinance" and that "[t]he unconstitutional action by the Individual City Defendants implements a decision officially adopted by the City." *Id*. at 23.

These assertions do not give rise to a plausible claim that the City established a policy of selective enforcement through the deliberate and conscious choice of policymakers. *See Twombly*, 550 U.S. at 570 (A pleading must allege "enough facts to state a claim to relief that is plausible on its face."). The Macks state that *some* City officials were aware of a conflict between the Macks and Caryotakises and allege that the Weed Ordinance was singularly enforced. The Court cannot reasonably infer from these facts that the City was deliberately indifferent to the Macks' equal protection rights. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."). Thus, the Macks have failed to plead facts sufficient to overcome a

12(b)(6) motion to dismiss. The section 1983 claim pertaining to the City and should be dismissed.

ii.    **Equal Protection Claim Alleged Against the Individual City Defendants**

The Macks additionally plead a section 1983 claim against the Individual City Defendants. Specifically, the Macks allege that Community Service Officer Eric Jacobson, Plymouth City Police Chief Michael Goldstein, Forestry Technician Lara Newberger, Deputy Director of Parks and Recreation Barb Northway, and City Manager Laurie Ahrens violated their rights to equal protection by selectively enforcing the Weed Ordinance. ECF No. 13 at ¶ 120. The Individual City Defendants maintain that they are entitled to qualified immunity; the Court agrees with Defendants.

The doctrine of qualified immunity protects government actors from personal liability under a section 1983 claim "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The "driving force" behind the creation of the doctrine was to eliminate insubstantial claims against government officials prior to discovery. *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987). Accordingly, the Court should promptly resolve matters of immunity. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

When evaluating a qualified immunity argument under the motion to dismiss standard, "defendants must show that they are entitled to qualified immunity on the face of the complaint." *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005) (citing *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996)). The Court considers two questions when determining whether officials are protected by qualified immunity (1) whether the facts alleged, viewed in the plaintiff's favor, support a finding that the conduct of the defendants violated a constitutional right and (2) whether that constitutional right was "clearly established" at the time of the incident such that a reasonable

11

officer would have known that his or her actions were unlawful. *Pearson*, 555 U.S. at 232. The order in which the qualified immunity prongs are addressed is left to this Court's discretion. *Id*. at. 236.

The Macks allege that the Individual City Defendants violated the Constitution by selectively enforcing the Weed Ordinance. To successfully state a claim for an equal protection violation premised on selective enforcement, two factors must be established: that "(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Advantage Media, L.L.C. v. City of Hopkins*, 379 F. Supp. 2d 1030, 1045-46 (D. Minn. 2005).

Assuming without deciding that the Individual City Defendants violated a constitutional right by selectively enforcing the Weed Ordinance, the Court moves to the second factor in determining qualified immunity and concludes that the constitutional right at issue was not clearly established at the time of the alleged violation. *See Pearson*, 555 U.S. at 232.

For a right to be clearly established, "[t]he contours of the constitutional right at issue 'must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right,' but 'this is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; rather it is to say that in light of pre-existing law the unlawfulness must be apparent.'" *Cooke v. Stanton*, No. 08-1175, 2009 WL 424537, at *8 (D. Minn. Feb. 18, 2009) (quoting *Anderson*, 483 U.S. at 640). In other words, for the second portion of the qualified immunity analysis, "[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

12

Here, it was not sufficiently clear to the Individual City Defendants that failing to enforce the Weed Ordinance with other similarly situated parties was unconstitutional because precedent holds directly to the contrary. The Supreme Court has explicitly stated that a "class of one" equal protection claim in the public employment context—that is, a claim where a plaintiff establishes that he or she was intentionally treated differently from similarly situated individuals without sufficient rational basis for the different treatment—is particularly unsuited for equal protection analysis because the disputed action at issue involves discretionary decisionmaking. *See Enguist v. Oregon Dept. of Agr.*, 553 U.S. 591 (2008). In *Enguist* the Court stated:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be treated alike, under like circumstances and conditions is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Id*. at 603. The Eighth Circuit applied the reasoning of *Enguist* to a "class of one" equal protection claim regarding a police officer's investigatory decisions in *Flowers v. City of Minneapolis, Minnesota*, stating "[i]n light of *Enguist*, therefore, we conclude that while a police officer's investigative decisions remain subject to traditional class-based equal protection analysis, they may not be attacked in a class-of-one equal protection claim." 558 F.3d 794, 799-800 (2009).  Because these cases stand for the proposition that "class of one" equal protection claims are not viable, no reasonable city employee could possibly know that exercising discretion when enforcing the Weed Ordinance against the Macks would result in a constitutional violation. Accordingly, the Individual City Defendants are entitled to qualified immunity and the section 1983 claim against them should be dismissed.

13

### iii.    Due Process Claim

In Count IV, the Macks allege a section 1983 claim based on a substantive due process violation. Substantive due process "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Flowers v. City of Minneapolis, Minn.*, 478 F.3d 869 , 872-73 (8th Cir. 2007) (internal citation and quotation marks omitted). It is clear from the pleadings that the Macks' substantive due process claim is premised on the alleged selective enforcement of the weed ordinance. ECF No. 13 at ¶ 119 ("The City and the City Defendants' discriminatory enforcement of the Weed Ordinance violated the Macks' rights to due process of law."). However, this claim is improper because Eighth Circuit precedent has previously established that "the constitutional basis for objecting to intentionally discriminatory application of the laws is the Equal Protection Clause, not the Due Process Clause." *St. Croix Waterway Ass'n v. Meyer*, 178 F.3d 515, 521 (8th Cir. 1999) (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)). As the Macks' due process claim focuses solely on selective enforcement of the Weed Ordinance, their 1983 claim based on substantive due process fails and should be dismissed.[2]

---

[2]    Even if this Court were to find a substantive due process claim based on discriminatory enforcement viable, the due process argument still fails because the Macks neglected to plead facts which support such a claim for either the City or the Individual City Defendants. A substantive due process claim requires a showing that "(1) that the official violated one or more fundamental constitutional rights, and (2) that the conduct of the executive official was shocking to the 'contemporary conscience.'" *Flowers v. City of Minneapolis, Minn.*, 478 F.3d 869, 872-73 (8th Cir. 2007) (internal citations omitted). The Macks' amended complaint fails to identify which "fundamental constitutional" right the City and Individual City Defendants likely violated in relation to the due process claim. Likewise, the Macks pled no facts establishing that the officials' conduct in question was "shocking to the contemporary conscience."

2.      **The Remaining Federal Claims**

Counts V and VI of the amended complaint (brought against the City and the Individual City Defendants) call for attorneys' fees and declaratory judgment, respectively. Both counts, therefore, are dependent upon on the success of the Macks' section 1983 claims. Because the section 1983 claims fail against both the City and the Individual City Defendants, the Court additionally recommends the dismissal of Counts V and VI**.**

B.      **The Caryotakises' 12(b)(1) Motion to Dismiss**

The Caryotakises move to dismiss the state law trespass claims brought against them pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction. The Caryotakises maintain that there is an insufficient basis to establish supplemental jurisdiction over the state law trespass claims because the state and federal claims pled in the amended complaint do not derive from a common nucleus of operative facts. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966) ("The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. The state and federal claims must derive from a common nucleus of operative fact."). Alternatively, the Caryotakises argue that if this Court grants the City's motion to dismiss, it should decline to exercise supplemental jurisdiction over the remaining state law claims. Because this Court recommends dismissing the Macks' federal claims against the City and Individual City Defendants, the Court finds that it is inappropriate to exercising supplemental jurisdiction over the remaining state law trespass claims.

Pursuant to 28 U.S.C. § 1367(c)(3), a federal district court may decline to exercise supplemental jurisdiction over state law claims if the court has "dismissed all claims over which it has original jurisdiction." *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010). A court may exercise

discretion when concluding whether to continue to entertain state law claims after dismissing federal claims in a case. *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1249 (8th Cir. 2006). However, the Eighth Circuit has specified that when "resolution of the remaining claims depends solely on a determination of state law, the Court should decline to exercise jurisdiction." *Glorvigen v. Cirrus Design Corp*., 581 F.3d 737, 749 (8th Cir. 2009) (citing *Farris v. Exotic Rubber and Plastics of Minn., Inc.*, 165 F. Supp. 2d 916, 919 (D. Minn. 2001)). When deciding whether to exercise supplemental jurisdiction, courts look to a number of factors including judicial efficiency, convenience, and fairness to litigators. *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 221 (8th Cir. 1990) (internal citation omitted). In evaluating these factors, Courts often consider "the stage of litigation; the difficulty of the state claim; the amount of time and energy necessary for the claim's resolution; and the availability of a state forum." *Goddard, Inc. v. Henry's Foods, Inc.*, 291 F. Supp. 2d 1021, 1051 (D. Minn. 2003) (internal citations and quotation marks omitted).

Considering the above factors, the Court concludes that federal court is not the appropriate forum for adjudicating the Macks' state law trespass claims. Importantly, this case remains in the early stages of litigation, no scheduling order has been issued and no discovery has been conducted. ECF No. 36 at 11. This Court has not exerted substantial time or resources into resolving the dispute. Likewise, because this case is currently in the early stages of resolution, failing to exercise supplemental jurisdiction would not prejudice either party. Finally, an available state forum exists in which to resolve the remaining state law trespass claims. In sum, "this case is the usual case in which all federal-law claims are eliminated before trial wherein the balance of factors to be considered point toward declining to exercise jurisdiction over the remaining state-law claims." *Magee v. Trustees of the Hamline University, Minn.,* No. 11-949, 2013 WL 1332031, at * 9 (D.

Minn. Mar. 29, 2013) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)) (internal quotation marks omitted).

## IV.   CONCLUSION

The Court concludes that both the City and the Individual City Defendants are entitled to dismissal of the section 1983 claims (Count IV) alleged against them. The Macks failed to plead sufficient facts to establish a viable equal protection claim against the City based on selective enforcement of the Weed Ordinance. The Individual City Defendants are entitled to qualified immunity because it was not clearly established that enforcement of the Weed Ordinance against the Macks was unconstitutional at the time of the Individual City Defendants' disputed actions. As Counts V and VI for attorneys' fees and declaratory judgment are contingent upon the survival of the 1983 claims, Counts V and VI should additionally be dismissed. Finally, the Court declines to exercise supplemental jurisdiction over the remaining state law trespass claims and therefore recommends dismissal of Counts I-III against the Caryotakises.

## V.   RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, it is **HEREBY RECOMMENDED** that:

1.     The Caryotkises' motion to dismiss (ECF No. 16) should be **GRANTED**;

2.     The City of Plymouth and the Individual City Defendants' motion to dismiss (ECF No. 29) should be **GRANTED**;

3.     and Counts I-VI should be **DISMISSED WITH PREJUDICE**.


DATED: February 14, 2014                     *s/Franklin L. Noel*
                                             FRANKLIN L. NOEL
                                             United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **February 28, 2014**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by February 28, 2014 a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.