## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| ANDREW MACK and CATHERINE MACK, | Civil No. 13-1838 (JRT/FLN) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION & ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| PAUL CARYOTAKIS, PAULA CARYOTAKIS, CITY OF PLYMOUTH, ERIC JACOBSON, MICHAEL GOLDSTEIN, LARA NEWBERGER, BARB NORTHWAY, and LAURIE AHRENS, | |
| Defendants. | |

Julie N. Nagorski and James M. Susag, **LARKIN HOFFMAN DALY & LINDGREN LTD.**, 7900 Xerxes Avenue South, Suite 1500, Minneapolis, MN 55431, for plaintiffs.

Mark K. Thompson, **MARK K. THOMPSON LAW OFFICE LLC**, 842 Raymond Avenue, Suite 200, Saint Paul, MN 55114, for defendants Paul and Paula Caryotakis.

George C. Hoff, Jared D. Shepherd, and Justin L. Templin, **HOFF BARRY & KOZAR, P.A.**, 775 Prairie Center Drive, Suite 160, Eden Prairie, MN 55344, for defendants City of Plymouth, Eric Jacobson, Michael Goldstein, Lara Newberger, Barb Northway, and Laurie Ahrens.

This case arises out of a contentious relationship between neighbors that developed as a result of vegetation growing on the portion of Andrew and Catherine Mack's property that borders the property of Defendants Paul and Paula Caryotakis ("the Caryotakises"). After the Caryotakises repeatedly complained to the City of Plymouth

("the City") about vegetation on that portion of the property, the City issued a citation to Andrew and Catherine Mack ("Plaintiffs") for violation of a city ordinance governing weed maintenance.  Plaintiffs brought this action against the Caryotakises, the City, and several individual employees of the City ("City Defendants"), (collectively, "Defendants").  Plaintiffs allege constitutional claims against the City and City Defendants and state law claims against the Caryotakises.  Upon the City and City Defendants' motion to dismiss for failure to state a claim and the Caryotakises' motion to dismiss for lack of jurisdiction, United States Magistrate Judge Franklin L. Noel issued a Report and Recommendation ("R&R") recommending that the Court dismiss all of Plaintiffs' claims, to which Plaintiffs objected.  Although Plaintiffs have proposed amendments to the complaint, in light of the motions to dismiss, the Court concludes that the proposed amendments cannot cure the deficiencies that warrant granting both motions to dismiss because Plaintiffs have not sufficiently alleged that the issuance of the citation was vindictive or based on animus.  Thus, the Court will adopt the R&R, grant both motions to dismiss, and deny Plaintiffs' motion to amend.

## BACKGROUND

The Court recites the facts underlying this dispute according to Plaintiffs' allegations.  Plaintiffs live on a piece of property that is adjacent to property owned by

the Caryotakises.  (First Am. Compl. ¶¶ 13-14, July 30, 2013, Docket No. 13.)[1]  Portions

of Plaintiffs' property "are wooded and . . . not maintained as a traditional English-style

lawn," and Plaintiffs wished to develop those portions "as a wetland buffer strip."  (*Id.*

¶ 21.)

## I.    ONGOING DISPUTE BETWEEN PLAINTIFFS AND CARYOTAKISES

Plaintiffs allege that beginning in the summer of 2004, the Caryotakises

"repeatedly entered the Mack Property" near the pond in the north portion of Plaintiffs'

property, and often would mow the grasses and other plants on that portion of the

property without permission.  (*Id.* ¶ 17-20.)[2]  From 2008 through 2010, the Caryotakises

requested Plaintiffs' permission to enter Plaintiffs' property and "alter the vegetation

growing there," on several occasions but Plaintiffs refused, after which the Caryotakises

promised to stop entering the property but nonetheless continued to do so.  (*Id.* ¶¶ 24-26.)

In 2011, Andrew Mack observed Paul Caryotakis on Plaintiffs' property and demanded

that he stop entering the property and altering the vegetation, although Mack again

observed Paul Caryotakis on the property.  (*Id.* ¶¶ 28, 31.)

---

[1] For the purposes of reciting the factual allegations, the Court cites to the First Amended Complaint, not the proposed Second Amended Complaint, although most of the factual allegations are identical.  Plaintiffs filed an Amended Complaint twenty days after the filing of the original complaint (*see* Am. Compl., July 30, 2013, Docket No. 13; Compl., July 10, 2013, Docket No. 1), which replaced the original complaint as the operative complaint.  The Court will refer to the Amended Complaint filed July 30, 2013, as the "First Amended Complaint" to avoid confusion with the proposed Second Amended Complaint discussed below.

[2] Plaintiffs allege that Paul Caryotakis is a "City of Plymouth Housing and Redevelopment Authority Commissioner," (*see* Am. Compl. ¶ 3), but do not make any further allegations about how this relates to or supports their substantive claims.

In response to these alleged instances of trespass by the Caryotakises, Plaintiffs made a report to the City Police Department, which then sent a trespass notice to the Caryotakises, prohibiting them from entering Plaintiffs' property for a year. (*Id.* ¶ 33.) Shortly thereafter, Plaintiffs received a "nuisance weed notice from the Caryotakises on City letterhead," citing Plymouth City Code ("City Code") section 810.01 ("the Ordinance"), which provides that "[w]eeds, tall grasses and other rank or harmful vegetation[] growing upon any private property . . . in the City[] exceeding the height of eight (8) inches on properties other than Agricultural or Natural Preserve or buffer strips shall be cut . . . . by the owner of the property." (*Id.* ¶¶ 35-36; *id.*, Ex. B.) After receiving the notice, Plaintiffs contacted a city forestry technician, who inspected Plaintiffs' property and concluded that it did not violate the Ordinance. (*Id.* ¶¶ 7, 38.)

Plaintiffs then sought to build a fence to separate their property from that of the Caryotakises, for which they received a permit from the City. (*Id.* ¶ 41.) In June 2011, Paula Caryotakis noticed Andrew Mack building the fence and "orally accosted him," after which Paula Caryotakis brought two police officers to the location where the fence was being built who informed Andrew Mack that "he was trespassing and cutting down trees on the Caryotakis property," and gave him a trespass notice prohibiting him from entering their property until December 31, 2011. (*Id.* ¶ 45.) Thereafter, the Caryotakises began sending emails to the City or city employees complaining about Plaintiffs' fence, including emails on June 5, 2011, July 4, 2011, July 11, 2011, August 9, 2011, and August 10, 2011. (*Id.* ¶¶ 46-53.) The City treated several of these emails as formal complaints and inspected the fence, concluding that it was not in violation of any portion

of the City Code.  (*Id.* ¶¶ 47, 49, 52.)  The Caryotakises continued to send emails, now to

Plaintiffs in addition to the City.  (*Id.* ¶¶ 57-59.)  Plaintiffs called the City to complain

about the emails and the City indicated that the Caryotakises would be informed that they

must stop emailing Plaintiffs.  (*Id.* ¶ 59.)  The Caryotakises continued to send emails to

and contact the City and city employees about Plaintiffs' fence, but the City never found

that the fence violated the City Code.  (*Id.* ¶¶ 62-67.)

## II.    CITY ENFORCEMENT OF THE ORDINANCE

Plaintiffs received a letter from a city forestry technician on July 6, 2012, stating

that they were in violation of the Ordinance because of the height of vegetation on their

property.  (*Id.* ¶ 70.)  Plaintiffs allege that at that time, the vegetation on their property

did not violate the Ordinance because the City did not identify any species of vegetation

that fell under the Ordinance's requirement and because that portion of their property was

exempt from the Ordinance because it was a "buffer strip."  (*Id.* ¶ 71.)  Plaintiffs also

allege that the vegetation on their property "was substantially identical to that growing on

other adjacent and nearby properties, as well as many City-owned properties."  (*Id.* ¶ 72.)

Plaintiffs allege that during the summer of 2012 the Caryotakises continued to

contact city employees to complain about Plaintiffs' vegetation.  (*Id.* ¶¶ 74-76, 78.)  On

July 16, 2012, Plaintiffs received a letter from the City Attorney stating that their fence

complied with the City Code, but gave no indication that the vegetation violated the

Ordinance.  (*Id.* ¶ 77.)  On September 11, 2012, Paula Caryotakis appeared at a City

Council meeting and "presented false information and complained about the vegetation

on the Mack Property," including "photographs that were held out to have been then-

recently taken," but were actually taken during the summer of 2011.  (*Id.* ¶ 79.)  On September 14, 2012, the City Manager sent Plaintiffs a letter stating that the photographs presented at the City Council meeting showed that the vegetation on their property violated the Ordinance and that the City intended to enforce the Ordinance against them. (*Id.* ¶ 80.)  A city forestry technician inspected Plaintiffs' property again on September 17, 2012, without Plaintiffs' permission and concluded that the vegetation violated the Ordinance.  (*Id.* ¶¶ 81-82.)

On October 10, 2012, the City Manager requested that the City Police Department issue a citation to Plaintiffs for violating the Ordinance, which a police officer did on October 12, 2012.  (*Id.* ¶¶ 84-85.)  Thereafter, Plaintiffs, through counsel, contacted city employees and officials several times, requesting that they enforce the Ordinance against similar and adjacent properties, which the City has not done.  (*Id.* ¶¶ 86-89, 93.)

## III.   THIS PROCEEDING

Plaintiffs brought this action against the Caryotakises, the City, and several city employees in their individual capacities: Eric Jacobson, a Community Service Officer with the Plymouth Police Department; Michael Goldstein, the City's Chief of Police; Lara Newberger, a Forestry Technician employed by the City; Barb Northway, the City's Deputy Director of Parks and Recreation; and Laurie Ahrens, the City Manager.  (*Id.* ¶¶ 5-9.)  The First Amended Complaint alleges claims for trespass to personal property and real property, and treble damages against the Caryotakises (Counts I-III), as well as claims under 42 U.S.C. § 1983 for violation of the Macks' right to equal protection and due process under the Fourteenth and Fifth Amendments (Count IV), attorneys' fees

under 42 U.S.C. § 1983 (Count V), and declaratory judgment (Count VI) against the City and City Defendants.  (*Id.* ¶¶ 99-137.)  The essence of Plaintiffs' constitutional claims against the City and City Defendants is that they arbitrarily enforced the Ordinance against Plaintiffs without enforcing the Ordinance against other property owners with vegetation in violation of the Ordinance.  (*See id.* ¶¶ 118-120.)

The Caryotakises filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) arguing that even if the federal claims against the City and City Defendants were to proceed, the state law claims against the Caryotakises should be dismissed because they do not arise out of the same nucleus of operative facts as the federal claims.  (Mot. to Dismiss for Lack of Jurisdiction, Aug. 13, 2013, Docket No. 16.)  The City and City Defendants subsequently filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiffs failed to state claims against them for violation of either equal protection or due process, and that any violation of a constitutional right was not clearly established so the City Defendants were entitled to qualified immunity.  (Mot. to Dismiss, Dec. 19, 2013, Docket No. 29.)  The motion also argued that Plaintiffs failed to state claims against the City that a policy or custom caused any constitutional violation. (*Id.*)

The motions to dismiss came before the Magistrate Judge, who issued an R&R recommending that both motions be granted.  (R&R, Feb. 14, 2014, Docket No. 52.) With regard to the City, the R&R concluded that Plaintiffs failed to plausibly allege that the City had a policy of selective enforcement or that the City was deliberately indifferent to Plaintiffs' equal protection rights.  (R&R at 10.)  With regard to the individual City

- 7 -

Defendants, the R&R concluded that they were entitled to qualified immunity on the claims for equal protection.   The R&R observed that, in light of the Eighth Circuit's determination that class-of-one equal protection claims are not viable in the context of discretionary decisionmaking, it was not clearly established at the time of the alleged violation that the City Defendants' conduct violated the constitution because enforcing the Ordinance involved discretionary decisionmaking.  (*Id.* at 13.)  The R&R concluded that any due process claims failed because Plaintiffs' allegations of discriminatory application of the laws actually fell under the equal protection analysis.  (*Id.* at 14.) Finally, the R&R recommended that, in light of its recommendation to dismiss all federal claims, the Court decline to exercise supplemental jurisdiction over the state law claims against the Caryotakises.  (*Id.* at 15-16.)   Plaintiffs object to the R&R on nearly all grounds.  (Objections to R&R, Feb. 28, 2014, Docket No. 53.)

After Defendants moved to dismiss, Plaintiffs filed a motion to amend their First Amended Complaint with a Proposed Second Amended Complaint ("Second Amended Complaint") on January 31, 2014.  (Mot. for Leave to Amend Compl., Jan. 31, 2014, Docket No. 41; *see also* Aff. of George C. Hoff, Ex. A ("Second Am. Compl."), Feb. 7, 2014, Docket No. 48.)  The Second Amended Complaint includes, among other things, additional detail with regard to the City and City Defendants and Plaintiffs' equal protection claims against them.   (*See* Second Am. Compl. ¶¶ 93-99, 120-123.) Defendants oppose the motion to amend, arguing that amendment would be futile because, even with the proposed amendments, Plaintiffs' claims would fail.  (Mem. in

- 8 -

Opp'n to Mot. to Amend, Feb. 7, 2014, Docket No. 47; Mem. in Opp'n to Mot. to Amend, Feb. 7, 2014, Docket No. 50.)

## ANALYSIS

Before the Court are both the Plaintiffs' Objections to the R&R and the Plaintiffs' motion to amend the complaint. The Court concludes that amendment would be futile because the Second Amended Complaint does not cure the deficiencies which warrant dismissal of the First Amended Complaint. Therefore the Court will deny the motion to amend and grant the City and City Defendants' motion to dismiss the original complaint for failure to state a claim. Because the Court will dismiss the federal constitutional claims against the City and City Defendants, the Court will also grant the Caryotakises' motion to dismiss the state law claims against them.

## I.    STANDARD OF REVIEW

Upon the filing of a report and recommendation by a magistrate judge, a party may "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

When, as here, futility is raised as a basis for opposing any proposed amendments to a complaint, the Court must determine whether the proposed claims state a claim for relief at this stage of the case. *See Briscoe v. Cnty. of St. Louis, Mo.*, 690 F.3d 1004, 1015 (8th Cir. 2012) ("When the court denies leave to amend on the basis of futility, it means the district court has reached the legal conclusion that the amended complaint

could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure . . . ." (alteration and internal quotation marks omitted)); *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010).   Thus, the question in determining whether to permit amendment is "whether the proposed amended complaint states a cause of action under the *Twombly* pleading standard." *Zutz*, 601 F.3d at 850-51.

In reviewing a motion to dismiss brought under Rule 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states "'a claim to relief that is plausible on its face.'"   *See, e.g.*, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.   "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility'" and therefore must be dismissed. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

## II.   INDIVIDUAL CITY DEFENDANTS

The First Amended Complaint brings claims against the City Defendants under 42 U.S.C. § 1983 for violation of Plaintiffs' rights both to due process and equal protection of the law.   With regard to the constitutional due process claim, however, Plaintiffs make no specific argument in their objections to the R&R or in their memorandum in support of their motion to amend regarding the basis for or legal viability of that claim.   (*See* Objections to R&R at 4-12; Mem. in Supp. of Mot. to Amend at 4, Jan. 31, 2014, Docket

No. 41.)[3]   The Court concludes that Plaintiffs fail to state a claim for a due process violation, whether procedural or substantive, because Plaintiffs have not alleged that the City Defendants deprived them of any protected liberty interest without due process of law, *see Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 817 (8th Cir. 2011), or that the City Defendants violated a fundamental constitutional right of Plaintiffs' in a way that was "shocking to the contemporary conscience," *Flowers v. City of Minneapolis, Minn.*, 478 F.3d 869, 873 (8th Cir. 2007) (internal quotation marks omitted).   Furthermore, "the constitutional basis for objecting to intentionally discriminatory application of the laws is the Equal Protection Clause, not the Due Process Clause."   *St. Croix Waterway Ass'n v. Meyer*, 178 F.3d 515, 521 (8th Cir. 1999).   The Court thus proceeds to analyze Plaintiffs' allegations of a violation of equal protection.

### A.    Class-of-One Equal Protection

The Supreme Court has recognized that the "Equal Protection Clause gives rise to a cause of action on behalf of a 'class of one' where the plaintiff did not allege membership in a class or group."   *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).   The Supreme Court in *Olech* found that a plaintiff adequately pleaded such a claim "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."

---

[3] Plaintiffs list an objection to the R&R's conclusion regarding due process, but make no argument regarding those objections, which Plaintiffs claim is because of word count limitations. (*See* Objections to R&R at 4 & n.2.)   The Court need not determine whether this is a permissible practice in objecting to an R&R, because it concludes, after *de novo* review, that Plaintiffs fail to state a claim for violation of due process.

*Id.*; *see also Flowers*, 558 F.3d at 799.  In his concurrence, Justice Breyer disagreed that merely showing arbitrary or irrational differences between the treatment of similarly situated individuals would give rise to such a claim, but concluded that the circumstances in that case sufficed because the plaintiffs had alleged "vindictive action, illegitimate animus, or ill will" by the defendants.  *Olech*, 528 U.S. at 565-66 (Breyer, J., concurring) (internal quotation marks omitted).

Later, the Supreme Court limited the availability of this type of claim to exclude claims against government officials making decisions that necessarily involve the exercise of discretionary authority based on subjective, individualized determinations. *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 603 (2008).  The Supreme Court reasoned that "[i]n such cases the rule that people should be treated alike, under like circumstances and conditions is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted."  *Id.* (internal quotation marks omitted).  Circumstances involving such discretionary determinations included individualized employment decisions and issuing a speeding ticket to one of many indistinguishable drivers driving over the speed limit on a busy highway. *See id.* at 603-04.

In light of *Engquist*, the Eighth Circuit has concluded that taking action to enforce a weed ordinance similar to the Ordinance here is a decision "similar to a decision not to promote a particular employee or to give a ticket on a busy highway," because "the enforcement of county weed ordinances [is] based on a number of subjective factors within the purview of the county officials' discretionary authority."  *Novotny v. Tripp*

*Cnty., S.D.*, 664 F.3d 1173, 1179 (8th Cir. 2011).  Given this clear, applicable precedent, the Court concludes that Plaintiffs cannot state a claim for a violation of Equal Protection on the basis of arguments that the City Defendants arbitrarily enforced the Ordinance against them but not against other similarly situated property owners in the City.[4]

But this bar on selective enforcement challenges in the context of discretionary decisions does not always apply to cases where the plaintiff has pled actual animus, intentional targeting, or singling out—the additional factor urged by Justice Breyer in his *Olech* concurrence.  Courts have found that, where plaintiffs allege that they were treated differently based on animus or because they were intentionally targeted, the limitation based on exercises of discretionary judgments does not apply.  In *Mathers v. Wright*, 636 F.3d 396, 400-01 (8th Cir. 2011), the Eighth Circuit addressed whether allegations that a teacher had mistreated a special education student stated a class-of-one equal protection claim.  The court observed that classroom-level decisions by teachers likely fall into the realm of discretionary decisions immune from such claims, as in *Engquist* and *Flowers*, but found that because the allegations were that the teacher mistreated the student because of personal animus, the claim was beyond the realm of immune discretionary professional judgment and could proceed:

> By refusing to teach J.S.J., isolating her during recess and fire drills, and making her crawl on the floor, Wright treated J.S.J. differently from other

---

[4] It is possible that the manner in which a particular municipal entity typically enforces such ordinances does not involve the kind of discretion that the Supreme Court and Eighth Circuit have found to be immune from class-of-one equal protection challenges, but Plaintiffs do not allege such a circumstance here.

> students in her classroom.  On the face of the complaint, we discern no
> rational basis for this disparate treatment, nor can we infer that Wright
> suffered a lapse of professional judgment. . . .  Indeed, Mathers claims the
> opposite: that the mistreatment did not arise from educational or safety
> concerns, but from personal animus against J.S.J. because she was disabled.
> Thus, Wright's conduct exceeded the scope of professionally acceptable
> choices and was not discretionary.  These factors all support the conclusion
> that, under the facts alleged, a constitutional violation of J.S.J.'s equal
> protection rights occurred.

*Id.* at 400-01 (citing *Hanes v. Zurick*, 578 F.3d 491, 496 (7th Cir. 2009) (denying qualified immunity to police officers sued under a class-of-one theory and concluding that "[t]he officer motivated by malice alone is not exercising discretion and is not weighing the factors relevant to the officer's duties to the public")).  Thus, allegations that defendants intentionally discriminated against a plaintiff on the basis of animus or intent to single out the plaintiff can, even in a context where decisions are typically discretionary and based on individualized circumstances, state a claim for violation of the Equal Protection Clause on the basis of a class-of-one theory.  *Cf. Geinosky v. City of Chicago*, 675 F.3d 743, 748 (7th Cir. 2012) (allegations of animus or being singled out excused a different limitation on a class-of-one arbitrary enforcement challenge: the requirement of identifying similarly situated individuals).

### B.    Plaintiffs' Allegations

Here, the bulk of Plaintiffs' allegations in the First Amended Complaint fall into the category clearly barred by *Novotny* – allegations that the City Defendants enforced the Ordinance against Plaintiffs but not against similarly situated others arbitrarily or with no rational basis for the difference.  (*See, e.g.*, First Am. Compl. ¶¶ 86-89, 93-94, 118.) The Second Amended Complaint further details these allegations, but given the clear bar

on such claims in *Novotny*, it is not clear that any amount of detail can suffice to state a claim for a class-of-one equal protection violation on the basis of arbitrary enforcement of a weed ordinance against a plaintiff but not others similarly situated.

But Plaintiffs also make some allegations of animus, which can bring allegations of differential treatment outside the scope of acceptable discretionary decisionmaking. *See Mathers*, 636 F.3d at 402.   The First Amended Complaint includes only one allegation that could be construed to allege animus or ill-will as the basis for differential treatment:

> The City and the City Defendants' discriminatory enforcement of the Weed Ordinance against the Macks was invidious and in bad faith, based upon impermissible considerations such as the Macks' insistence on their property rights vis-à-vis the Caryotakises and the Macks' rejections of the Caryotakises' repeated demands that the Macks concede property rights to the Caryotakises.

(First Am. Compl. ¶ 95.)   Although this paragraph alleges that the City Defendants' discrimination was invidious, the First Amended Complaint included nothing to support this beyond these "labels and conclusions."   *Dunbar v. Wells Fargo Bank, N.A.*, 709 F.3d 1254, 1257 (8th Cir. 2013) (internal quotation marks omitted).

The Second Amended Complaint expands this allegation to include factual details supporting the allegation that the City Defendants intentionally targeted Plaintiffs or enforced the Ordinance against them out of malice, but even with these additional allegations, Plaintiffs do not sufficiently allege animus to be able to assert a class-of-one equal protection claim on the basis of an otherwise discretionary decision.   The Second Amended Complaint includes new paragraphs for each of the City Defendants, each of

which includes some version of an allegation that the Defendant enforced the Ordinance against Plaintiffs despite the fact that Plaintiffs had not violated the Ordinance.  (*See, e.g.*, Second Am. Compl. ¶ 120(a) (Newberger sent the first City-endorsed violation notice letter despite having personally inspected the property and determined that there was no violation and knowing that the Caryotakises had sent a wrongful notice to Plaintiffs on city letterhead); *id.* ¶ 120(b) (Northway sent the second violation notice letter despite the fact that the vegetation on the property did not violate the Ordinance); *id.* ¶ 120(c) (Ahrens sent a letter concerning the Ordinance and requested that the police department issue a citation to the Macks, despite having known well before about the Caryotakises' "persistent and baseless complaints" about the Macks' fence and having received a copy of the City Attorney's letter stating that the fence complied with the city code and that the "weed issue" would not be addressed until 2013); *id.* ¶ 120(d) (Goldstein requested that a police officer issue a citation to the Macks despite the fact that the vegetation did not violate the Ordinance and with knowledge of the Caryotakises' persistent and baseless complaints); *id.* ¶ 120(e) (Jacobson issued the citation to Andrew Mack "despite the fact that the vegetation on the Mack Property did not violate the Weed Ordinance at any relevant time").)

Allegations that a defendant enforced an ordinance against an individual despite knowing that there had been no violation might support an inference of malice, but Plaintiffs actually plead that only one of the City Defendants **knew** that Plaintiffs had allegedly not violated the Ordinance.  (*See id.* ¶¶ 120(a)-(e) (alleging that only Newberger knew that Plaintiffs' property did not violate the Ordinance because she

actually inspected the property and determined that it did not violate the Ordinance).)
But besides this allegation that Newberger knew there was no violation but nevertheless
sent a notice letter, there is no other allegation that could be construed as supporting an
inference that Newberger sent the letter out of animus.

Furthermore, these allegations pale in comparison to circumstances where courts
have concluded that a defendant acted with sufficient animus to base an equal protection
claim. First, this is not a case where two neighbors made complaints about each to the
police with similar frequency, but police repeatedly responded by arresting the plaintiff at
least eight times "no matter who initiated the complaint." *See Hanes*, 578 F.3d at 494,
496. Rather, the Caryotakises complained to the City repeatedly about the vegetation on
Plaintiffs' property (*see* Second Am. Compl. ¶¶ 46, 48, 50, 52, 57-59, 62-66, 75-76, 79),
and despite all of those complaints, the City ultimately only sent two warning letters and
issued one citation against Plaintiffs (*id.* ¶¶ 70, 80, 85). In contrast, Plaintiffs made a
complaint to the City regarding the Caryotakises only twice, and the City responded to
both. Plaintiffs complained to the City regarding the multiple emails they had received
from the Caryotakises, to which Plaintiffs allege the City responded by informing the
Caryotakises that "they had to stop emailing the Macks" (and Plaintiffs do not allege that
they received emails from the Caryotakises thereafter). (*See id.* ¶¶ 59, 60.) Plaintiffs also
complained about the Caryotakises entering their property without permission, to which
the City responded by issuing Paul Caryotakise a trespass order. (*Id.* ¶¶ 32-33.)

Second, the adverse action Plaintiffs allege that the City and City Defendants took
against them—one citation for violation of the Ordinance—is minimal compared to other

cases in which courts have permitted claims to proceed based on animus.  In *Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012), the court permitted a claim for class-of-one equal protection violation to proceed even without identification of similarly situated individuals where the plaintiff alleged that defendants had issued twenty-four parking tickets to plaintiff over a fourteen-month period with no legitimate basis.  *Id.* at 745, 748.  The court concluded that "[t]he complaint clearly tells a story in which Geinosky was targeted.  Reason and common sense provide no answer to why he was targeted that could be considered a legitimate exercise of police discretion."  *Id.* at 748.  At most, Plaintiffs allege that the City Defendants sent them two letters and issued one citation (*see* Second Am. Compl. ¶¶ 70, 80, 85), after concluding on the basis of an inspection that the vegetation on Plaintiffs' property violated the Ordinance (*see id.* ¶ 82).

This is not a case where the complaint "clearly tells a story in which [Plaintiffs were] targeted" and where there is no possible reason that such targeting "could be considered a legitimate exercise of . . . discretion."  *Geinosky*, 675 F.3d at 748.  Nor have Plaintiffs alleged facts that the City Defendants acted with such animus that their conduct "exceed[ed] the scope of professionally acceptable choices and stem[med] from an improper personal motivation."  *Mathers*, 636 F.3d at 402.  Rather, in alleging that the City and City Defendants' discriminatory enforcement was invidious and in bad faith, Plaintiffs list as a motivation for such bad faith "the City's and the City Defendants' desire to terminate the involvement by the City and the City Defendants in the relationship between the Macks and Caryotakises."  (Second Am. Compl. ¶ 95.)

The Court therefore concludes that neither the First Amended Complaint nor the Second Amended Complaint adequately states a claim for a class-of-one equal protection violation against the City Defendants.  Because the Court concludes that Plaintiffs have not stated a claim for a violation of their constitutionally protected rights to equal protection, the Court need not consider whether, for the purposes of qualified immunity from monetary damages, any constitutional rights were clearly established at the time of the alleged violation.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

## III.   *MONELL* CLAIM AGAINST THE CITY

Plaintiffs object to the R&R's conclusion that its claims against the City should be dismissed for failure to state a claim of policy or custom sufficient to satisfy *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978).  But there can be no *Monell* claim without a constitutional violation.  *See Sanders v. City of Minneapolis, Minn.*, 474 F.3d 523, 527 (8th Cir. 2007) ("Without a constitutional violation by the individual officers, there can be no § 1983 or *Monell* failure to train municipal liability.").  Thus, because neither the First Amended Complaint nor the Second Amended Complaint adequately alleges a constitutional violation by the City Defendants, Plaintiffs cannot maintain a claim against the City on the basis of any such

violation (regardless of any additions regarding the City's actions in the Second Amended Complaint).[5]

## IV.   SUPPLEMENTAL JURISDICTION OVER THE CARYOTAKISES

The Caryotakis' move to dismiss the state law claims against them for lack of jurisdiction because, they argue, they do not derive from the same common nucleus of operative fact as the federal claims against the City and City Defendants.   Under 28 U.S.C. § 1367, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."   28 U.S.C. § 1367(a).   The district court may decline to exercise supplemental jurisdiction over such claims if, among other things, "the district court has dismissed all claims over which it has original jurisdiction."   *Id.* § 1367(c)(3). "Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed . . . ." *Gibson v. Weber*, 433 F.3d 642, 647 (8th Cir. 2006).   In light of early stage of this litigation, *see Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . .  point toward declining to exercise jurisdiction over the remaining state-law claims"), and the fact that remaining claims involve only state law, *see Glorvigen v.*

---

[5] Counts V and VI for attorneys' fees and declaratory judgment are similarly dependent on the substantive constitutional claims against the City and City Defendants in Counts III and IV, so because those claims must fail Counts V and VI must also be dismissed.

*Cirrus Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009) ("[W]here, as here, resolution of the remaining claims depends solely on a determination of state law, the Court should decline to exercise jurisdiction." (internal quotation marks omitted)), the Court declines to exercise jurisdiction over these claims.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** Plaintiffs' objections [Docket No. 53] and **ADOPTS** the Report and Recommendation of the Magistrate Judge dated February 14, 2014 [Docket No. 52] to the extent the Recommendation is consistent with this Order.   Accordingly **IT IS HEREBY ORDERED** that:

1.    Defendants Paul and Paula Caryotakis' Motion to Dismiss for lack of jurisdiction [Docket No. 16] is **GRANTED**.

2.    The City and City Defendants' Motion to Dismiss [Docket No. 29] is **GRANTED**.

3.    Plaintiffs' Motion to Alter/Amend/Supplement the Pleadings [Docket No. 41] is **DENIED**.

4.    Plaintiffs' claims against the Caryotakises in the First Amended Complaint (Counts I-III) are **DISMISSED without prejudice**.

5.    Plaintiffs' claims against the City and City Defendants' in the First Amended Complaint (Counts IV-VI) are **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

DATED: March 31, 2014
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
United States District Judge